FILED
SEP 0 9 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**EDWARD EUGENE YOUNG** :
:
**V.** : **C.A. NO. 03-220S**
:
**A.T. WALL, in his capacity as** :
**the Director of the Rhode Island** :
**Department of Corrections** :

**MOTION FOR SUMMARY JUDGMENT**

Now comes Defendant, A.T. Wall, in his capacity as Director, State of Rhode Island, Department of Corrections, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby moves the Honorable Court for a grant of summary judgment. In support, Defendant Wall submits a Joint Statement of Facts, the supporting Memorandum of Law, and the Affidavit of Wall.

WHEREFORE, Defendant respectfully requests that the Motion for Summary Judgment be granted and that judgment enter thereon.

Respectfully Submitted,

DEFENDANT

A.T. Wall, Director
R.I. Department of Corrections

By his attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Thomas A. Palombo, Bar No. 4212
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2296
Fax: (401) 222-2995

**CERTIFICATION**

I, the undersigned, hereby certify that I mailed a true copy of this Motion for Summary Judgment, by first class mail, postage pre-paid, on this 9th day of September, 2005 to the following:

Melissa S DiFonzo

**Andrew B. Prescott, Esquire**
**Stacie Boeniger Collier, Esquire**
NIXON PEABODY, LLP
One Citizens Plaza
Providence, RI 02903

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **EDWARD EUGENE YOUNG** | : | |
| | : | |
| **V.** | : | **C.A. NO. 03-220S** |
| | : | |
| **A.T. WALL, in his capacity as the Director of the Rhode Island Department of Corrections** | : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

At a time when Rhode Island citizens are receiving extremely low interest on their investments, especially on smaller bank accounts, Plaintiff, Edward Eugene Young ("Plaintiff" or "Young"), a State inmate, brings this civil action against Defendant, A.T. Wall ("Wall"), in his capacity as Director of the State of Rhode Island ("State"), Department of Corrections ("DOC"). Young alleges a "property interest" in and the "constitutional right" to interest on his inmate accounts, with no statutory basis for the claim, and after the DOC's policy was changed, with notice and opportunity for hearing, to no longer pay interest. Thus, Young's constitutional claims have no merit.

Defendant Director Wall respectfully submits this Memorandum of Law in Support of his Motion for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, with the attached Affidavit of Wall. In addition, the parties submit a Joint Statement of Facts, with attached Exhibits. For the reasons set forth, Wall strongly asserts to the Honorable Court that there exist no genuine issues of material fact and that he is entitled to judgment as a matter of law.

**FACTS AND TRAVEL**

Defendant Wall submits herewith a Joint Statement of Facts ("JSF"), Exhibits, and the Affidavit of Wall. This civil action commenced in 2003, when Young, a State inmate, filed a *pro se* civil action alleging, *inter alia*, an unconstitutional taking and the violation of procedural due process, under the U.S. and R.I. Constitutions, as to the "interest" (*i.e.*, return of investment) on his "inmate accounts" created pursuant to R.I. Gen. Laws § 42-56-1 *et seq*., in particular Subsection 22. Pursuant to the statute and policy, DOC maintains an Inmate Accounts Fund. Young has two so-called accounts. First, an "open" account, that he may use for commissary purchases, expenses, costs, etc., and from which he may transfer funds to a commercial bank account in his name. Second, a "closed" or encumbered account, into which 25% of his earnings are deposited, up to a maximum of $500, to be paid to him upon release. Director Wall, after research by and upon the advice of his Executive Committee, made the decision to stop paying interest on the accounts. Thereafter, DOC issued Policy 2.17-3 (effective June 9, 2003).

The Court is preliminarily familiar with the present controversy, having recently issued Young v. Wall, 359 F.Supp.2d 84 (D.R.I. 2005). Noteworthy, however, is the plain fact that *Policy 2.17-3 has not yet been before the Court*. In considering Wall's Rule 12 Motion to Dismiss, the Court stated: "viewing the facts in the light most favorable to Young, it is quite possible that the Defendant's failure to distribute interest in accordance with the Inmate Accounts Policy [Policy 2.17-2] violated Young's right to procedural due process under the Fourteenth Amendment." 359 F.Supp.2d at 93. This ruling is based on Young's *pro se* allegation of Wall not paying interest where a DOC policy expressly required the payment of interest.

In the Court's Decision and Order: "Defendant's Motion to Dismiss [was] GRANTED with respect to all of Plaintiff's claims, except the claim that the Defendant improperly appropriated interest earned on the Plaintiff's prison accounts in violation of the Due Process Clause."[1] Young, 359 Fed. Supp. 2d. at 94. As to the procedural due process claim, the Court concluded: "while Plaintiff has no constitutionally-protected property interest in the interest that accrues on his prison accounts, he has a limited property right in such interest which cannot be withdrawn without affording him procedural due process. . . ." *Id.* (Emphasis added.) In so ruling, the "Court takes no position on the underlying merits of this claim [and] it remains to be seen whether such interest was, in fact, appropriated by the Defendant, what process the [Defendant] provided, and whether it was constitutionally adequate." Id. at 93, n. 13 (citation omitted).

After the Court's ruling, Plaintiff, by and through legal counsel, filed a Second Amended Complaint (hereinafter, the "Complaint",) that supercedes the original *pro se* filing. The Complaint alleges DOC had a written policy to pay interest on inmate accounts for a number of years; however, effective June 9, 2003, DOC Policy No. 2.17-3 stated that the interest would accrue to the State instead of to the inmates. The Complaint avers an unconstitutional taking and a violation of procedural due process, under the U.S. and R.I. Constitutions, as to DOC's change in policy. Young seeks injunctive relief, compensatory and punitive damages, and attorney's fees and costs.

---

[1] Technically then, Young's Federal Takings claim is dismissed. Nonetheless, certain that Young shall take a "second bite at the apple," and to preserve any and all appellate issues, both the Federal and State Takings claims are fully argued below.

## ARGUMENT

### 1. Young Failed To Invoke The Remedy Of 42 U.S.C. Section 1983.

Plaintiff Young alleges violations of the U.S. Constitution's Fifth and Fourteenth Amendments; yet he fails to invoke the appropriate statutory remedy – 42 U.S.C. § 1983. The Complaint simply alleges federal question jurisdiction pursuant to 28 U.S.C. §1331. However, Young cannot bring an action directly under the Federal Constitution.

"Section 1983 creates a remedy for constitutional violations by state actors, and 'a plaintiff may not sue a state defendant directly under the Constitution where § 1983 provides a remedy … .'" Damicis v. Mosey, 2004 WL 57075 at 1 (D.Ma. 2004) (quoting Martinez v. City of Los Angeles, 141 F.3d 1373, 1382 (9th Cir.1998)). *See also* Boveri v. Town of Saugus, 113 F.3d 4, 6 (1st Cir.1997) ( "It is by now axiomatic that 42 U.S.C. § 1983 supplies a private right of action against a person who, acting under color of state law, deprives another of federally secured rights.") In Deamicis, the court continued: "Section 1983 is the exclusive remedy for the plaintiff's alleged constitutional violations. … Because DeAmicis may not sue Mosey directly under the Constitution where § 1983 provides a remedy, the defendants are entitled to dismissal of Count IV [civil rights] on this basis alone." 2004 WL 57075 at 1. *See also* Aurelio v. Rhode Island, 985 F.Supp. 48, 55 (D.R.I. 1997) ("42 U.S.C. § 1983 does not, therefore, create substantive rights but merely provides a remedy for the violation of rights that are found in the Constitution or laws of the United States. *See, e.g.* West v. Town of Bristol, 712 F.Supp. 269, 274 (D.R.I.1989) (*citing* Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979) and Martinez v. State of California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481(1980).") (Emphasis added.)

Here, Young plainly avers that Wall has violated his Federal constitutional rights. This alone does not create a procedurally proper, and viable, civil action. Young is asserting rights without pleading any remedy. Therefore, his claims under the U.S. Constitution fail.

### 2. Young's Claims Under Article I, Sections 2 Of The R.I. Constitution Fail Because He Cannot State A Claim Directly Thereunder.[2]

Young alleges that Wall violated his right to "procedural due process," as guaranteed under R.I. Constitution, Article I, Section 2, by changing DOC's policy on the payment of interest to inmates. In relevant part, R.I. Constitution, Article I, Section 2, states - "No person shall be deprived of life, liberty or property without due process of law, nor shall any person be denied equal protection of the laws." Young's State due process claim fail because he cannot bring a civil action directly under R.I. Constitution Article I, Section 2.

The Supreme Court of Rhode Island considered a damage claim under Article I, Section 23 of the R. I. Constitution, the so-called "victim's rights amendment," in Bandoni v. State, 715 A.2d 580 (R.I. 1998). In an exhaustive opinion, the high Court held that the "amendment does not expressly provide a cause of action for damages" and "that a private cause of action for damages was not intended by either the General Assembly or the constitutional framers." 715 A.2d at 589 and 594. In addition, the Court ruled that "[it] has never held that violating a recognized right requires monetary

[2] The R.I. Constitution's "Takings Clause," Article I, Section 16, is self-executing and expressly provides a remedy. See Bandoni, 515 A.2d at 599 and Annicelli v. Town of South Kingstown, 463 A.2d 133, (R.I. 1983). That said, for the reasons fully set forth below, Young's takings claims, both Federal and State, are without merit.

damages." Id. at 594. Moreover, there is no precedent supporting a damage claim under the due process clause of Article 1, Section 2.[3]

Accordingly, Plaintiff Young's claim for compensatory damages under R.I. Constitution Article I, Section 2 is without merit. Therefore, this damage claim should be denied and Wall's Motion for Summary Judgment should be granted thereon.

**3. Plaintiff's Prayer For Damages Against Wall In His Capacity As Director Are Barred By Will v. Michigan.**

As the *sole* Defendant in this civil action, Plaintiff Young names: "A.T. Wall in his capacity as the Director of the Rhode Island Department of Corrections." Director Wall is neither named, nor sued, in his individual or personal capacity. Yet, in his official capacity, under the U.S. Supreme Court precedent of Will v. Michigan, 491 U.S. 58 (1989), Defendant Director Wall is not a "person" who can be sued for monetary damages for the alleged violation of constitutional rights. *See* Will, 491 U.S. at 71. ("We hold that neither a State nor its officials acting in their official capacities are persons under §1983.") As the Supreme Court reasoned, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." 491 U.S. at 71. (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)).

---

[3] In Jones v. Rhode Island, 724 F.Supp 25, 35 (D.R.I. 1990), in dicta, Judge Lagueux "[i]nvok[ed] a Bivens-like [Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999 (1971)] analysis ... to conclude that there is an implied right to sue a state official individually for damages resulting from an alleged violation of the due process clause of Article I, Section 2 of the Rhode Island Constitution." The Court "[wa]s mindful, however, that the parameters of this constitutional cause of action must be limned by the Rhode Island Supreme Court." *Id.* In the passing years, however, the R.I. Supreme Court has not ruled that one may bring a damage claim under Article I, Section 2. This was later recognized by the District Court in Eastridge v. Rhode Island College, 996 F.Supp. 161, 169-70 (D.R.I. 1998). Bandoni, decided four months after Eastridge, suggests there is no such implied right. Nonetheless, in the instant case this is academic, for Young has failed to sue Wall individually or personally.

"As such it is no different from a suit against the state itself." *Id.* (citing Kentucky v. Graham, 473 U.S. 159, 165-166 (1985) and Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n. 55 (1978)).[4]

This doctrine has been applied numerous times in this judicial district. Last year, in Wiggins v. Rhode Island, 326 F.Supp.2d 297, 302 (D.R.I. 2004), this Court granted summary judgment to State officials, writing: "The rule of Will v. Michigan is that damage actions may not be brought against states, or individuals in their official capacities as state representatives, because states are not 'persons' within the meaning of 42 U.S.C. § 1983. See Will, 491 U.S. at 71, 109 S.Ct. 2304. To the extent that Plaintiff seeks damages or declaratory relief against the State or its [ ] officers in their official capacities pursuant to section 1983, summary judgment is therefore appropriate." *See also* Office of Child Advocate v. Lindgren, 296 F.Supp.2d 178, 188 (D.R.I. 2004) ("When a plaintiff names a public officer in his or her official capacity, that plaintiff seeks to impose liability on the officer's employer, which makes a suit against a state official the functional equivalent of a suit against the state… .") and R.I. Brotherhood of Correctional Officers v. Rhode Island, 264 F.Supp.2d 87, 92(D.R.I. 2003) "Plaintiff also brought suit under § 1983 against defendants, Lincoln Almond, Robert L. Carl, Jr., Paul J. Taveres [sic] and Ashbel T. Wall, II in their official capacities as state officials. As the Supreme Court established in Will, … plaintiff cannot maintain a suit for compensatory damages against the individually named defendants in their official capacities.")

---

[4] Young's request for injunctive relief, however, survives Will's bar. 491 U.S. at 71, n. 10. ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (*Citing* Kentucky v. Graham, 473 U.S. at 167, n. 14, 105 S.Ct. at 3106, n. 14 and Ex parte Young, 209 U.S. 123, 159-160, 28 S.Ct. 441, 453-454 (1908).) This is the so-called Ex parte Young exception.

Accordingly, Young's prayer for monetary damages, as against Wall in his official capacity as DOC Director, is barred. Therefore summary judgment should be granted as to damages.

### 4. Young Failed To Exhaust Administrative Remedies By Filing A Grievance.

As admitted in Deposition, Young was aware of DOC's Inmate Grievance Policy 13.10 ("Grv. Policy"), had filed approximately six (6) inmate grievances, and failed to file a grievance regarding the change in the interest policy. JSF at ¶ 29.[5]

The Prison Litigation Reform Act of 1995 ("PLRA"), amended 42 U.S.C. § 1997e(a), provides in its entirety that:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. (Emphasis added).

In Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819 (2001), the Supreme Court examined both emphasized phrases. There, an inmate lawsuit claimed that correctional officers violated the Eighth Amendment by assaulting him and denying medical attention. Inmate Booth sought various forms of relief, including monetary damages. Pennsylvania's Department of Corrections provided a grievance system able to address Booth's allegations; however, it had no authority to award the monetary damages. *Id.* at 734, 121 S.Ct. at 1822.

[5] Young's Deposition statement that he was retaliated against in the past for filing grievances is not credible. First, this is not a legal basis for failing to file a grievance. Second, is he suggesting, "it's better to sue than grieve?" Lastly, if Young would like to bring his lengthy disciplinary record before the Court (by his admission, sixteen {16} times in segregation), Wall would have no objection.

Before filing a civil action, Booth availed himself to the first grievance level, but he "never sought intermediate or final administrative review after the prison authority denied relief." *Id.* Because Booth did not exhaust "administrative remedies ... available" within the meaning of § 1997e(a), the District Court dismissed the lawsuit and the Third Circuit affirmed. On certiorari, the Supreme Court identified the issue as "whether or not a remedial scheme is 'available' where . . . the administrative process has authority to take some action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress." *Id.* at 736, 121 S.Ct. at 1822-23. The Court responded affirmatively.

The Court observed that § 1997e(a)'s phrase "such administrative remedies as are available," requires "a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Id.* at 738, 121 S.Ct. at 1823. Thus, the Court concluded that "Congress's imposition of an obviously broad[ ] exhaustion requirement," provided compelling evidence of its intent to require prisoners to exhaust all available administrative remedies prior to filing suit, even if the specific relief sought is not administratively available. *Id.* at 740-41, 121 S.Ct. at 1825. After Booth, the Supreme Court examined the phrase "prison conditions" and held that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002).

According to DOC's Inmate Grievance Policy, "[a]ll inmates, both sentenced and awaiting trial, are eligible to file grievances," and "grievable areas of institutional life"

include the "interpretation and application of [DOC] policies, rules, and procedures;" individual ... inmate ... property loss or damage; and "[a]ny other matter relating to access to privileges, programs, and/or services[,] conditions of care or supervision[,] and living facility conditions." Grv. Policy at 2-3. Similar to the grievance procedure in Booth, DOC's Inmate Grievance Policy provides for three levels: (1) the inmate must first seek resolution at the lowest level of the chain of command, and if not resolved; (2) the inmate may submit the grievance to the Warden of the facility where the inmate resides, and if the inmate is not satisfied at this level; (3) the inmate may appeal to the Director of the DOC. Grv. Policy at 5-12. The Policy expressly states that "[o]nce all extensions have been exhausted and the grievant still desires to seek further action, s/he may attempt to have the matter addressed in the Court system." Grv. Policy at 11. The Grievance Policy expressly provides the following remedies: (1) restitution or monetary compensation, (2) change of facility policies, (3) correction of inmate records, and (4) other remedies, as appropriate. Grv. Policy at 12.

Here, the allegations in Young's Complaint as to an alleged "property interest" in interest on his inmate accounts are grievable. The grievance process is mandatory, even if the relief sought is unavailable. Because a grievance process with an array of remedies was available to Young, his failure to avail and exhaust his administrative remedies is dispositive of this civil action. *See* Booth, 532 U.S. at 740-41, 121 S.Ct. at 1825.

**5. DOC's Policy Change Did Not Effect A Taking Of Private Property.**

The Fifth Amendment to the U.S. Constitution, in pertinent part, reads: "nor shall private property be taken for public use, without just compensation." Article 1, Section 16 of the R.I. Constitution contains an almost identical provision. Young alleges

violation of these provisions "by taking and/or using Plaintiff's accrued interest from the Inmate Accounts Fund without just compensation." Cpt., ¶¶ 19 and 22.

The Supreme Court last term delivered a regulatory Takings Clause Opinion in Lingle v. Chevron U.S.A, Inc., ___ U.S. ___, 125 S.Ct. 2074 (2005), concerning market concentration and retail gasoline pricing (very much in vogue, these days). Writing for the Court, Justice O'Connor recognized a "common touchstone" in takings jurisprudence: "each of these tests [U.S. Supreme Court cases of Penn Central, Lucas and Loretto] focuses directly on the burden that government imposes upon private property rights." 125 S.Ct. at 2082. Moreover, "the Constitution protects rather than creates property interests." Phillips v. Washington Legal Foundation, 524 U.S. 156, 164, 118 S.Ct. 1925, 1930 (1998). In Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972), the high Court pronounced: "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

With this as background, it only makes sense to turn to relevant case law concerning inmate accounts. In Washlefske v. Winston, 234 F.3d 179 (4th Cir. 2000), *cert. denied*, 532 U.S. 983 (2001), the Fourth Circuit reviewed, and affirmed dismissal, of an inmate's takings claim that he was deprived of private property when Virginia used

the interest earned on his prison accounts.[6] Relying on Supreme Court precedent,[7] the appellate court reasoned:

> In short, we look outside the Takings Clause to traditional rules of property law to determine whether a constitutionally protected property interest exists, and only when a State, through legislation, rule, decision, or other action deprives an owner of such an interest, must it provide just compensation. But, if a statute creates a property right not previously recognized or one broader than that traditionally understood to exist, the property interest so created is defined by the statute and may be withdrawn so long as the State affords due process in doing so. 234 F.3d at 184. (Citations omitted.)

Washlefske then ruled that Virginia's statutes "create limited rights to funds given to prisoners for work performed while serving their prison terms. ... they create a limited property right defined by the terms of the statute... they create limited property rights for penological purposes." *Id.* at 185. Accordingly, the appellate court held:

> Because Washlefske never had a private property interest in these accounts as defined by common law, but only an interest defined by statute--a statute that gives him limited rights to those funds--he cannot claim that a property interest based on traditional principles of property law was taken. His property interest was that given by statute, and the State never took from him what was created by statute. Therefore, there was not a taking of private property as addressed in the Fifth Amendment. *Id.* at 185-86.

In Givens v. Alabama Dept. of Corrections, 381 F.3d 1064 (11th Cir. 2004), *cert denied*, 125 S.Ct. 2543 (2005), the Eleventh Circuit, after a concise discussion of relevant precedent, denied a former inmate's takings claim seeking interest on his inmate accounts. The appellate court so ruled, because "Alabama inmates do not have a common law property right to the interest that accrues on their accounts" and "Alabama

---

[6] In passing, Wall would note how much more generous Rhode Island is than Virginia. There, a mere $25.00 (as compared to $500.00 here) accumulates in the so-called "hold account," to be distributed upon an inmate's release. 234 F.3d at 181.

[7] Roth and Phillips, *supra* ,and Webb's Fabulous Pharmacies v. Beckwith, 449 U.S. 155, 101 S.Ct. 446 (1980), *see infra*.

has not created such an interest via statute, regulation, or policy." Id. at 1069-70. Thus, "absent such an interest, there is no 'taking'". *Id.* at 1070.

The Washlefske court (and also Givens) "recognized the unfortunate conflict we create with the Ninth Circuit in Schneider v. California Department of Corrections, 151 F.3d 1194 (9th Cir. 1998), in which the court held, without conducting an inquiry under traditional principles of property law,[8] that a convicted felon enjoyed a private property interest in the funds held in his prison account." 234 F.3d at 181. Of note, Schneider followed the common law maxim, applied in Phillips and Webb's, that "interest follows principal." 151 F.3d at 1201. Accordingly, the Ninth Circuit held "that interest income of the sort at issue here is sufficiently fundamental that States may not appropriate it without implicating the Takings Clause. ... the California inmates--like the creditors in Webb's and the clients in Phillips--possess a constitutionally cognizable property interest that triggers Takings Clause scrutiny." *Id.*

*See also* Hatfield v. Scott, 306 F.3d 223, 229 (5th Cir. 2002)(Following Phillips, and ruling "as a matter of law, where earned interest is used to pay for the administration of a fund providing a benefit to prisoners, there is no "taking" violative of the Fifth Amendment.") and Petrick v. Fields, 1996 WL 699706 at 1 (10th Cir. 1996)(Unpublished) ("We hold summary judgment for Defendants is appropriate because Mr. Petrick has no constitutionally protected property interest in interest earned on funds in his statutory draw or mandatory savings accounts.").

---

[8] Schneider engages in a discussion of "so-called 'new property'" (*citing* Roth) and "old property" ("a 'core' notion of constitutionally protected property into which state regulation simply may not intrude without prompting Takings Clause scrutiny."). *Id.* at 1200. However, as Washlefske ably points out, among other faults, Schneider fails to "determine[ ] who 'owned' the principal and to what extent." 151 F.3d at 186.

*Compare* Tellis v. Godinez, 5 F.3d 1314 (9th Cir. 1993), where the appellate court ruled that Nevada statute providing that interest and income earned on a prisoner's account must be credited to the fund created a protected property interest.[9] *See also* *Vance v. Barrett*, 345 F.3d 1083 (9th Cir. 2003). R.I. Gen. Laws § 42-56-22, however, contains no such provision for payment of interest.

Applying these teachings to Young's takings claim, there is no Rhode Island "common law" right to inmate interest. Further, the controlling statute creates no "property interest," in interest, limited or otherwise. Moreover, DOC changed its policy to discontinue the payment of interest on inmate accounts. Lastly, Wall submits that the "penological purposes" of § 42-56-22 and DOC policies (including 2.17-3) are rehabilitation, reduction of recidivism, creating work ethic, helping inmates learn a trade or gainful employment, for DOC to run its commissary in an effective, cost-efficient manner, and providing money upon release from prison. Affidavit of Wall, ¶ 3. Just as there is no property interest, there is simply no penological purpose in paying interest on inmate accounts. In addition, DOC Policy 2.17-3 provides that interest earnings are utilized to offset banking costs and negative balances. These sums are substantial. Affidavit of Wall, ¶ 4.[10] *See also* JSF, ¶¶ 10, 11 and 18.

The leading Supreme Court cases can be readily distinguished. *See* Webb's, 449 U.S. 155, 161-62 101 S.Ct. 446, 451 (1980)( County's taking of interest accruing on private funds deposited into court registry in interpleader action, in addition to court fee,

---

[9] The Dissent by Circuit Judge Farris is noteworthy: "I would welcome a constitutional right to interest, as would others in the marketplace, but there is none." 5 F.3d at 1317.

[10] There is a body of case law ruling that interest earned on inmate accounts may be used to defray the costs of administering the accounts. *See* the Ninth Circuit's decision in McIntyre v. Bayer, 339 F.3d 1097, 1101-02 (9th Cir. 2003) and the Fifth Circuit's decision in Hatfield, 306 F.3d at 229. *See also* Givens, 381 F.3d at 1067, n.5.

was a taking.) and Phillips, 524 U.S. 156, 165 and 172, 118 S.Ct. at 1930 and 1934 (Applying the common law "rule that 'interest follows principal'" and "hold[ing] that the interest income generated by funds held in IOLTA accounts is the 'private property' of the owner of the principal.") In these cases, the property rights of the plaintiffs, court litigants or legal clients, are clear or readily ascertainable. Here, Plaintiff Young is a prisoner, with no common law rights, and limited constitutional and statutory rights.

Wall emphatically asks - *what "private property" of Young's was taken?* Under Rhode Island law, Young has *no right* to prison employment. R.I. Gen. Laws § 42-56-22 ("*may* be permitted to labor in the *discretion* of the director"). If so employed, he has no right to be paid. *Id.* ("*may* be paid for not more than $3.00 dollars a day"). If paid, earnings are "credited and "disbursed…in accordance with the *rules and regulations* of the institutions." *Id.* DOC "*shall* maintain [ ] … earnings … up to a maximum of five hundred dollars ($500) …; those funds to be turned over to the prisoner at the time of his or her release from the institution, the funds being his or her property." *Id.* Wall asserts that these earnings are not Young's "private property" until the time of his release. *Id. See* Affidavit of Wall, ¶ 6. Finally, Young has no right to interest on earnings, Section 42-56-22 contains no such provision, express or implied, and DOC's policy to pay interest was amended. *Id.*[11]

As this Honorable Court's prior Decision recognizes, neither the interest follows principal rule nor the Takings Clause should be applied in this civil action, where Young simply has no common law or constitutional right to, or property interest in, labor, earnings and the payment of interest. Accordingly, applying Supreme Court precedent

---

[11] This argument is also applicable to Young's procedural due process claim. Once Wall decided to stop paying interest, Young had no constitutionally protected property interest.

and analogous case law from other jurisdictions, especially Washlefske and Givens, Young has no property interest in receiving interest on his inmate accounts cognizable under the Taking Clause of either the U.S. or R.I. Constitutions. Thus, Wall did not *take* Young's *private property* for public use. Therefore, the takings claims should be denied and Wall's Motion for Summary Judgment should be granted thereon.

**6. Young's Right To Procedural Due Process[12] Was Not Violated.**

Young alleges that "[b]y taking interest on earnings on Plaintiff's funds held on his behalf ... without first affording Plaintiff procedural due process,"[13] Wall violated his rights under the Fourteenth Amendment and R.I. Constitution Article I, Section 2. Thus, the issue before the Court is whether Young has a constitutionally protected property interest in receiving interest on his accounts. If so, the DOC must provide due process before it stops paying interest. Wall asserts that Young has no property interest, whatsoever, in interest payments. Assuming *arguendo* that he does, Young was provided adequate notice and, as argued above, failed to file the requisite inmate grievance – his opportunity to be heard.

Where one has a constitutional right under the Due Process Clause, grounded on a state-created property interest, due process requires notice and the opportunity to be heard before the interest can be taken away. *See* Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487 (1985) and Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701.

[12] In passing, Young's Complaint plainly does not allege any violation of the corollary right to substantive due process.

[13] Notwithstanding the dispositive nature of Argument 2. above, Wall further submits Argument 6. in opposition to Young's Federal and State due process claims.

Nonetheless, the huge body of prisoner's rights law clearly pronounces: "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975 (1974). There must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* More recently, the Court stated: "Admittedly, prisoners do not shed all constitutional rights at the prison gate, ... but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995)(quotations and citations omitted).

As the High Court wrote in Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600 (1972):

> Whether any procedural protections are due depends on the extent to which an individual will be condemned to suffer grievous loss. ... The question is not merely the weight of the individual's interest, but whether the nature of the interest is one within the contemplation of the liberty or property language of the Fourteenth Amendment. ... Once it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action. (Quotations and citations omitted.)

Director Wall does not contest that Young has "'a limited property right in the amounts deposited in [his name]--specifically...the limited right to access his [deposits] when permitted by statute, regulation, or policy.'" Young, 359 F.Supp.2d at 91 (*citing*

Givens and Washlefske) (Emphasis added.) Accordingly, in Rhode Island, there exist statutory and policy provisions for paid labor, for using "open" account funds in the commissary and for other purposes, and for receiving money from the "closed" account upon release. Young's asserted right to interest on his accounts, however, is quite another matter. Wall asserts that the Supreme Court's seminal pronouncement - "Property interests … are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits," Roth, 408 U.S. at 577, 92 S.Ct. at 2709 - is quite difficult to apply in the prison context. *See* Argument, *supra*. *A fortiori*, where, as here, there is no state law or policy to pay inmate interest. Moreover, the "precise nature" of DOC's function, *see* Morrissey, is to run a prison, with an inmates accounts system and a commissary. Not a bank.

The Court has preliminarily ruled that "§ 42-56-22 appears to create a property right to funds (at least those maintained in a prisoner's 'frozen' account), the right created is at best a 'limited property right, defined by the terms of the statute… .'" Young, 359 Fed. Supp. 2d. at 90 (*quoting* Washlefske, 234 F.3d at 18. This ruling, however, was on a Fed. R. Civ. P. Rule 12 posture, and is not a decision on the merits after all the facts and arguments are before the Court. The smoking gun fact is that Wall made a reasoned decision to change DOC's policy on interest. Affidavit of Wall, ¶¶ 10-16. There is no Federal constitutional right to, or State-created property interest in, inmate interest.

With all due respect, for the Court to rule that Young's right to procedural due process was violated by DOC's change to the Inmate Accounts Policy, would mean that DOC could *never* stop paying interest once it had started to do so. Neither the Due

Process Clause nor due process jurisprudence – especially in the prison context – supports such a ruling. Alternatively, if Your Honor rules that interest must be paid because the accounts are Young's money, then this is adopting the common law "interest follows principal" rule that this Court, as well as Washlefske and Givens, has rejected.

In addition, the DOC provided Young notice of its policy change by posting notices, by memoranda to inmates, in the prison newsletter, and in the inmate law library. JSF, ¶¶ 19-23 and 26. *See also* Exhibits. Young had actual notice. *Id.* Later, he corresponded with State administrators and the State Controller. JSF, ¶¶ 30-31. Moreover, Young had the right to be heard by filing a grievance under the Inmate Grievance Policy as to his alleged "property loss" occasioned by the change to the policy on interest, a right he chose not to exercise. *Id.*, ¶ 29. Lastly, Young also has the right to transfer all or some of his so-called "open" account funds to a commercial bank account in his name. *See* DOC Policy 2.17-3 III. E., JSF, ¶ 9, and Affidavit of Wall ¶ 5.

Finally, given the facts before the Court, the well-established case law on procedural due process is inapplicable in this civil action challenging DOC's policy change to no longer pay interest on inmate accounts. Respectfully, as fully argued above, the appropriate analysis here is under the Takings Clause – not the Due Process Clause.[14] Indeed, trying to fit this civil action into procedural due process jurisprudence is like trying to fit a square peg in a round hole. Therefore, as fully set forth above, Wall is entitled to summary judgment on Young's due process claims, both Federal and State.

---

[14] Washlefske, Givens and Schnieder all utilize a takings analysis. *See also* Lingle, __ U.S. __, 125 S.Ct. at 2083, admonishing against the "apparent commingling of due process and takings inquiries."

### 7. Wall Has Qualified Immunity[15] From Suit For Monetary Damages.

To address Wall's asserted qualified immunity from suit for damages, the Court must first "determine whether [Young] has alleged the deprivation of an actual constitutional right". Abreu-Guzman v. Ford, 241 F.3d 69, 73 (1st Cir.2001)(*quoting* Wilson v. Layne, 562 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). "Second, the court must 'proceed to determine whether the right was clearly established at the time of the alleged violation'". *Id.* (citations omitted). If the answer to either of these questions is "no," then the plaintiff's claim is dismissed. It is "[o]nly if these two questions are answered in the affirmative does the court address the particular conduct in question." *Id.* If the Court reaches this third step, then it analyzes the facts to determine whether an objectively reasonable officer would have understood that his conduct violated a clearly established constitutional right. *Id.* In this third step, the Court is determining whether the doctrine of qualified immunity will bar the suit.

The doctrine of qualified immunity precludes suits for money damages against state officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability [which]...is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The qualified immunity defense exists not only to shield officials from liability for damages, but also to protect from "the general costs of subjecting officials to the risks of trial – of discretionary action, and deterrence of able people from public service." Harlow, 457

[15] As set forth in Argument 3., Wall is sued only in his official capacity as Director, as to which damages are not available.

U.S. at 816. Qualified immunity leaves "ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." Bilida v. McCleod, 211 F.3d 166, 174 (1st Cir. 2000)(citing Malley v. Briggs, 475 U.S. 335, 341, 343 (1986)). Thus, to determine whether the doctrine of qualified immunity applies, the "objective reasonableness" standard is used. 475 U.S. 335 at 344.

Without proper immunity for reasonable *mis*interpretation, governmental actors would be placed in the untenable position of facing the burdens of litigation and the risk of liability for guessing incorrectly when the constitutional provision itself provides little guidance. In DeAbadia v. Izquierdo Mova, 792 F.2d 1187 (1st Cir. 1986), the First Circuit stated:

> …we are presently concerned not with the correctness of defendants' determination, on the one hand, nor their subjective state of mind, but of the 'objective reasonableness' of their conduct… Harlow demands not prescience, but subjective good faith.

792 F.2d at 1193. Lastly, the objective reasonableness determination is for the Court to make, and not for the jury. *Id.*

The facts of this case support a ruling that Wall has qualified immunity from suit. First, as fully argued, there was neither a taking nor a due process violation and, thus, Young has not been deprived of a constitutional right. Second, as set forth in Wall's Affidavit, the interest matter was discussed in DOC's Executive Committee, inquiries and research were conducted, and, thereafter, Director Wall made the decision to stop paying interest. Affidavit of Wall, ¶ 10-14. Wall's reasoning is fully set forth in the Affidavit. *See* Affidavit of Wall, *passim*.

Respectfully, given the split among the circuits, and the wealth of arguments on both sides, the Court should deem Director Wall's decision-making both made in good faith and objectively reasonable. Clearly, he was not plainly incompetent and did not knowingly violate any clearly established law. Therefore, Wall has qualified immunity from suit for money damages.

**CONCLUSION**

For all the reasons set forth, and as supported by the Exhibits, Affidavit of Wall and Joint Statement of Facts, Wall asserts that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Therefore, Defendant, A.T. Wall, in his capacity as DOC Director, respectfully requests that his Motion for Summary Judgment be granted.

Respectfully Submitted,

DEFENDANT

A.T. Wall, Director
R.I. Department of Corrections

By his attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Thomas A. Palombo, Bar No. 4212
Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2296
Fax: (401) 222-2995

**CERTIFICATION**

The undersigned, hereby certifies that a true copy of this Memorandum of Law in Support of Motion for Summary Judgment was sent by First Class U.S. Mail, postage pre-paid, on this 9th day of September, 2005 to the following:

Melissa L DiLonzo

**Andrew B. Prescott, Esquire**
**Stacie Boeniger Collier, Esquire**
NIXON PEABODY, LLP
One Citizens Plaza
Providence, RI 02903