SCANNED
SCANNED

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **EDWARD EUGENE YOUNG** | : | |
| | : | |
| **V.** | : | **C.A. NO. 03-220S** |
| | : | |
| **A.T. WALL, in his capacity as the Director of the Rhode Island Department of Corrections** | : | |

**AFFIDAVIT OF A.T. WALL, II**

I, Ashbel T. Wall, II, in my capacity as the Director, of the Rhode Island Department of Corrections ("DOC"), hereby deposes and states the following under oath:

1. I presently serve as Director of the State of Rhode Island, Department of Corrections ("DOC"), and have held this position since March 2000. Previously, I served in an Assistant Director capacity from 1987 to 1999;

2. Pursuant to R.I. Gen. Laws § 42-56-1 et seq., my statutory duties and responsibilities include the care, custody and control of all sentenced and awaiting trial inmates in the State of Rhode Island and the management, supervision and control of the Adult Correctional Institutions for the State of Rhode Island;

3. Under R.I. Gen. Laws § 42-56-22, passed in 1976, as DOC Director, I have discretion to allow inmates to labor, and to pay inmates up to $3.00 per day. Per the statute, earnings are credited to an inmate's account in accordance with DOC policies.The penological purposes of § 42-56-22 and DOC policies are rehabilitation, reduction of recidivism, creating work ethic, helping inmates learn a trade or gainful employment, for DOC to run its commissary in an effective, cost-efficient manner, and providing money upon release from prison;

4. Through this statutory authority, DOC has established an Inmate Accounts Fund, administered by an Office of Inmate Accounts, and for which policies and procedures

have been established. The Inmate Accounts Office costs approximately $450,000.00 in State funds to operate annually;

5. A DOC inmate has two types of accounts. First, a so-called "open" account, that an inmate may use for commissary purchases, expenses, costs, etc., and from which he may transfer funds to a commercial bank account in his name;
6. Second, § 42-56-22 requires DOC to maintain a so-called "closed" or encumbered account, into which is placed at least 25% of each inmate's earnings (except one serving life without parole) up to a maximum of $500.00. The statute further states that the closed account funds become the property of the inmate at the time of release.
7. Section 42-56-22 does not require the payment of return on investment, earnings or interest (hereafter, "interest") on the inmate accounts;
8. DOC Policy 2.17-2 became effective on April 24, 2000. This amended policy made no essential change to the provision on disposition of interest earned on inmate accounts. Under the Policy interest accrued to the inmates in an equitable fashion;
9. In 2001, DOC made a public solicitation for a firm to operate the inmate commissary and to provide a new inmate banking system. The solicitation included the requirement that the banking system provide the means to distribute interest among the inmates' accounts;
10. The issue as to DOC's payment of interest first arose when the three (3) vendors who responded to the solicitation stated that their inmate banking system would need to be customized for distribution of interest, as none of the correctional jurisdictions with which they were contracted had such a requirement;
11. DOC's Chief Financial Officer, Richard Frechette, brought this matter to the attention of me and my Executive Committee through his superior, Assistant Director of

Administration Ellen Evans Alexander. The issue was whether DOC should reconsider its then-current policy of distributing interest to inmates;

12. At that time, I requested that certain members of my Executive Committee, including Ms. Alexander and Chief Legal Counsel Anthony Cipriano, contact other jurisdictions, make inquiry and conduct research on the issues involved;
13. The result of their inquiry and research was that many other states do not pay interest on their inmate accounts, and that Rhode Island law does not require the payment of interest to inmates on their accounts.
14. I then made the final decision to cease the payment of interest on inmate accounts. DOC paid interest through May 2002. In June 2002, we provided notice to inmates through postings and newsletters. My decision in embodied in the August 28, 2002 Addendum to DOC Policy 2.17-2, and in the amended DOC Policy 2.17-3 effective June 9, 2003. Policy 2.17-3 includes numerous and significant other changes and took until Spring 2003 to finalize;
15. I made this decision, in large part, because I believe it is far more consistent with the public interest to pay interest earned into the State General Fund, rather than to inmates. Importantly, Policy 2.17-3 also provides that DOC utilizes interest to offset inmate banking costs and negative balances in accounts of released inmates. At this time, I am advised that the total of such negative balances is in excess of $57,000.
16. Additional factors that I took into consideration were the fact that § 42-56-22 does not mandate the payment of interest; the fact that our inmate account system is not a commercial bank, as confirmed by the State Banking Commission; and the fact that

inmates are free to transfer their open accounts to a commercial bank that pays them market interest rates.

17. I have asked Mr. Frechette to estimate how much interest earned since July 2002 would belong to Mr. Young if we had not made the change. He informs me that it would be approximately $25.

18. For all of these reasons, I believe that my decision to stop the payment of interest on inmate accounts is lawful and proper, and does not violate the law.

I hereby swear that the foregoing is true and accurate to the best of my knowledge and information.

Ashbel T. Wall II

**Ashbel T. Wall, II, Director**
State of Rhode Island
Department of Corrections

Subscribed and sworn to before me this 8th day of September, 2005:

My Commission Expires: 9-9-09

Marcia Ann Cygas